Veda PRYOR, pro se, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 08–408C.

United States Court of Federal Claims.

Dec. 22, 2008.

Veda Pryor, Bowie, MD, plaintiff pro se.

Russell A. Shultis, Washington, DC, with whom was Assistant Attorney General Greg-ory G. Kastas, for defendant. Rebecca Au-sprung, U.S. Army Litigation Division, Civil Personnel Branch, Arlington, VA, of counsel.

## MEMORANDUM OPINION AND ORDER

MILLER, Judge.

This case is before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.[1] Defendant moves, in the alternative, for summary judgment pursuant to RCFC 56(c). Argument is deemed unnecessary.

### FACTS

The following facts are drawn from the complaint and the documents attached to the parties' briefs. Plaintiff's complaint filed on June 2, 2008, seeks damages for breach of contract by the United States Army, Legal Services Agency Arlington, VA (the "Army"), based on a Negotiated Settlement Agreement (the "Settlement Agreement") entered into on December 12, 2006. During her employment as a paralegal specialist with the Army, plaintiff filed two Equal Employment Opportunity complaints in 2004 and 2005 under the Civil Rights Act of 1964, 42 U.S.C. § 2000e (2000), alleging discriminatory practices. Plaintiff also had pending an active claim with the Department of Labor's Employment Standards Administration, Office of Workers' Compensation Programs, when she entered into the Settlement Agreement. She alleges that assurances were given that these claims would not be impacted by the Settlement Agreement. *See* Def.'s Br. filed Oct. 1, 2008, Ex. A at 3 (stating that provision stipulating that plaintiff will not later challenge issues embodied in Settlement Agreement is not intended to apply to any existing workers' compensation claims or actions taken to enforce agreement).

The Settlement Agreement provided that plaintiff would be placed on a non-duty status for 480 hours, commencing on January 2,

---

1. Defendant originally moved on October 1, 2008, to dismiss for failure to state a claim. Its jurisdictional argument was relegated to its reply brief and did not address plaintiff's claim for declaratory relief. The court determines that plaintiff is charged with supporting jurisdiction or, alternatively, that the complaint fails the court's *sua sponte* obligation to assure itself that jurisdiction is present.

2007, and then immediately on leave without pay ("LWOP") for 480 hours and thereafter would be subject to a permanent ban from employment with the Army. The Settlement Agreement also provided that, for a one-year period, plaintiff would have a contact—Louella Alcaraz, a Human Resources Specialist, at the Civilian Personnel Advisory Center—who could verify any information regarding her employment, including length of service, positions and grades held, and salary.

Germane to this action are the provisions of the Settlement Agreement that plaintiff's Senior System Civilian Evaluation Report would "reflect an overall performance rating of Level 3 ('Success') within 30 calendar days" of the execution of the Settlement Agreement and that a "Formal Reprimand dated 10 May 2006" would be cancelled and removed from plaintiff's file. Moreover, if plaintiff received a "formal offer for employment with another Federal Agency before the expiration of the administrative leave and LWOP," the Army agreed to "coordinate with the gaining organization to release [plaintiff] from her appointment effective on a [convenient] date . . ." Plaintiff was to be promoted "non-competitively" from a GS–09 to GS–11 effective January 7, 2007. Def.'s Br. filed Oct. 1, 2008, Ex. A at 1–2. The Settlement Agreement recited in two separate provisions that, as per plaintiff's request, the Notification of Personnel Action, Standard Form 50 ("SF–50"), effecting her resignation would state that her resignation was tendered to "pursue more rewarding career opportunities." *Id.* at 2–3.

By letter dated February 5, 2007, plaintiff contacted the Deputy for the Equal Employment Opportunity Compliance and Complaints Review (the "EEOCCR") charging that the Army breached the Settlement Agreement. Plaintiff stated that the Army breached the negotiated settlement agreement by listing the Settlement Agreement as authority for her promotion on SF–50 form. Plaintiff also alleged that the performance evaluation raters signed, but did not date, the updated performance evaluation.

The Army represented, by a memorandum dated February 26, 2007, that it had addressed plaintiff's complaints by correcting the SF–50 form and by providing plaintiff with a finalized copy of her performance evaluation. The Army explained that the evaluation copy that plaintiff received was not the final version "that was forwarded to the Civilian Personnel Advisory Center for ultimate placement in her" personnel folder, which accounts for the lack of corresponding dates following the signatures of the Rater or Senior Rater. Def.'s Br. filed Oct. 1, 2008, Ex. C at 8. "[A]s a gesture of good faith," plaintiff received an additional 80 hours of LWOP. *Id.* at 8, 10. By letter dated March 8, 2007, the EEOCCR responded to plaintiff's allegations with the determination that the Settlement Agreement was not breached.

Plaintiff received a letter dated February 9, 2007, from the U.S. Department of Labor (the "DOL") Office of Workers' Compensation Programs advising that her claim for medical and wage benefits arising from a neck injury was "terminated" that date. The letter also advised plaintiff that she was entitled to priority consideration if she applied for reemployment within thirty days. Plaintiff contacted the EEOCCR, by letter dated February 20, 2007, charging that the Army breached the Settlement Agreement by not advising her that she was eligible for priority consideration for re-employment. Shortly thereafter, plaintiff amended her February 20, 2007 letter, by a letter dated February 26, 2007, to include the complaint that the permanent ban from employment was unlawful under an Office of Personnel Management regulation providing for her eligibility for priority consideration for re-employment.

By letter dated March 19, 2007, the Army responded to plaintiff's allegations stating that the provisions and referenced regulations in its February 9, 2007 letter do not apply to plaintiff because "[plaintiff] has never left Federal employment and from DOL's perspective, she has recovered from her injury." Def.'s Br. filed Oct. 1, 2008, Ex. G at 30–31. The DOL's decision was in response to plaintiff's workers' compensation claim filed in September 2001 . . . and "does not conflict with the [Settlement] Agreement." *Id.* at 31. "There is no provision in the Agreement that restricts or limits [plaintiff's]

rights in regard to her workers' compensation claims." *Id.*

By letter dated April 3, 2007, the EEOCCR also determined that the Settlement Agreement had not been breached. In support of its decision, the EEOCCR directed plaintiff to paragraphs 5(b) and 8 of the Settlement Agreement. Paragraph 5(b) provides, in pertinent part: "This provision is not intended to impact any workers' compensation claims currently pending before the Department of Labor[.]" Def.'s Br. filed Oct. 1, 2008, Ex. A at 3. Paragraph 8 states that "No other promises or agreements will be binding unless reduced to writing and signed by both parties." *Id.* at 4.

On May 7, 2007, before plaintiff's LWOP period expired, plaintiff formally resigned from her position at the Army. Due to lack of communication and administrative errors attributed to the Army, plaintiff's resignation was not formally issued until June 21, 2007.

By letter dated May 31, 2007, Eugene Johnson, Injury Compensation Program Administrator for the Army, erroneously informed the DOL that plaintiff's resignation was effective in February 2007. After plaintiff's workers' compensation benefits for a wrist injury were terminated, plaintiff contacted the EEOCCR by letter dated June 14, 2007, charging another breach of the Settlement Agreement. By letter dated June 28, 2007, the Army contacted the DOL stating that the effective date for plaintiff's resignation was May 7, 2007, not February 2007. The Army sent a letter of apology to plaintiff, dated June 28, 2007, informing her that her resignation date was changed correctly to May 7, 2007.

On June 13, 2007, the Virginia Employment Commission (the "VEC") contacted the Army to determine whether plaintiff was eligible to receive benefits. The Army informed VEC of plaintiff's prior and current employment status and the existence of her workers' compensation claims for her neck and wrist injuries. The information was related to VEC by agency counsel for the Army and by Mr. Johnson.

By facsimile transmission dated July 5, 2007, plaintiff charged, again, that the Army breached the Settlement Agreement. Plaintiff contended that the Army did not timely process her resignation causing her health insurance to lapse. That same day the Army responded by explaining that all federal employees receive "a 31–day free extension of [health] coverage" starting on the "last day of the pay period in which [plaintiff] separated from federal service." Def.'s Br. filed Oct. 1, 2008, Ex. Q at 51. After the 31–day period, plaintiff could elect to continue coverage for up to eighteen months. Plaintiff had 60 days "after [ ] separation from federal service or receipt of this notice" to enroll in continued coverage. *Id.* By letter dated August 1, 2007, the EEOCCR determined that the Army did not breach the Settlement Agreement. The EEOCCR stated that although the Army did not process plaintiff's resignation within the time frames stipulated by the Settlement Agreement, the Army remedied any problems arising from this delay by extending plaintiff's LWOP status for another 80 hours.

On June 2, 2008, plaintiff filed a complaint in the United States Court of Federal Claims naming three Army officials as defendants. The complaint pleads one count for breach of contract and a second count for declaratory judgment. Plaintiff seeks damages for breach of the Settlement Agreement in the amount of $98,500.00.

On August 1, 2008, defendant filed a motion to dismiss, pursuant to RCFC 12(b)(1), the claims plaintiff filed against three named federal officers. By order entered on September 12, 2008, this court granted defendant's motion because the court lacks jurisdiction to entertain actions against named federal officers, *Brown v. United States*, 105 F.3d 621, 624 (Fed.Cir.1997), and such suits are subject to dismissal as to the named individuals, *United States v. Sherwood*, 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). *See Pryor v. United States*, No. 08–408C, at 3 (Fed.Cl. Sept.12, 2008) (order granting motion to dismiss). Although plaintiff's response did not dispute defendant's authorities, she characterized her claim as "a straightforward contact dispute under the Tucker Act." Pl.'s Br. filed Sept. 2, 2008, at 4.

Defendant on October 1, 2008, filed its second motion to dismiss for failure to state a claim for relief or for summary judgment, arguing that plaintiff "cannot establish that the Army breached the settlement agreement or that she incurred damages arising from an alleged breach." Def.'s Br. filed Oct. 1, 2008, at 10. Plaintiff pleads that several acts by the Army led to four separate claims for breach of the Settlement Agreement: 1) breach by stating the wrong reason for promotion on the SF–50 form and not dating plaintiff's performance evaluation; 2) breach by not informing plaintiff "of her reemployment rights or her right to be placed on the Reemployment Priority List," Compl. filed June 2, 2008, ¶ 15; 3) breach by "provid[ing] false information regarding Plaintiff's ... termination date and reasons for termination to the Virginia Employment Commission and to the Office of Workers' Compensation Programs, U.S. Department of Labor ...," id. ¶ 12; and 4) breach by not timely processing plaintiff's resignation. Defendant's reply brief filed on October 1, 2008, moved for dismissal based on lack of subject matter jurisdiction and asserted that plaintiff's causes of action were pursuing claims under the Federal Employee Compensation Act, 5 U.S.C. §§ 8101, 8105 (2000), which cannot supply a basis for subject matter jurisdiction.

## DISCUSSION

I. *Motion to dismiss for lack of subject matter jurisdiction*

1. *Standards*

 Jurisdiction must be established before the court may proceed to the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Any party may challenge, or the court may raise *sua sponte*, subject matter jurisdiction at any point in a proceeding, even upon appeal. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction.... [The plaintiff] bears

the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed.Cir.2002). Federal courts are presumed to lack jurisdiction unless the record affirmatively indicates the opposite. *Renne v. Geary*, 501 U.S. 312, 316, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991).

2. *Status as a plaintiff pro se*

 Briefs filed by *pro se* litigants are held to a less stringent standard than formal briefs filed by attorneys. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *see also Roche v. USPS*, 828 F.2d 1555, 1558 (Fed.Cir.1987) (vacating and remanding case back to agency for hearing on jurisdictional issue, stating that *pro se* plaintiffs are not expected to plead like lawyers). The United States Court of Claims approved of straining the court's "proper role in adversary proceedings to the limit, [to search the] record to see if [a pro se] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969). However, while "the fact that [a plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, ... it does not excuse its failures, if such there be." *Henke v. United States*, 60 F.3d 795, 799 (Fed.Cir.1995) (reversing and remanding dismissal of plaintiff's suit as time-barred). Although plaintiff is given some leniency in presenting her case, her *pro se* status does not render her immune from pleading facts upon which a valid claim can rest. *See, e.g., Ledford v. United States*, 297 F.3d 1378, 1382 (Fed.Cir.2002) (affirming dismissal of *pro se* plaintiff's complaint which sought, *inter alia*, tax refund); *Constant v. United States*, 929 F.2d 654, 658 (Fed.Cir.1991) (sanctioning *pro se* plaintiff for filing frivolous appeal). As this court stated in *Demes v. United States*, 52 Fed.Cl. 365, 369 (2002), "while a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from a finder of fact to advocate." Addi-

tionally, the leniency afforded *pro se* litigants with respect to mere formalities does not relieve them of the burden to meet jurisdictional requirements. *Kelley v. Sec'y, United States Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987) (finding lack of jurisdiction and vacating decision in favor of Government). Plaintiff bears the burden of establishing that jurisdiction exists. *Mars Inc. v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 1372 (Fed.Cir.1994).

### 3. *Declaratory relief*

 Apart from ordering relief under 28 U.S.C. §§ 1491(a)(2) or (b)(2), the Court of Federal Claims has no power to grant a declaratory judgment. *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed.Cir.1998). The Court of Federal Claims cannot adjudicate a complaint that seeks only declaratory relief. *Id.* at 716–17. *See United States v. King*, 395 U.S. 1, 5, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) ("In the absence of an express grant of jurisdiction from Congress, we decline to assume that the court of Claims has been given the authority to issue declaratory judgments."). The Federal Circuit has reaffirmed that the Court of Federal Claims lacks jurisdiction to grant declaratory judgments. *See Gonzales & Gonzales Bonds and Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 944–46 (Fed.Cir.2007).

 Because the court cannot grant equitable relief unrelated to a claim for monetary relief pending before the court, *Katz v. Cisneros*, 16 F.3d 1204, 1208 (Fed.Cir.1994), it is not sufficient that the court's decision may affect the disposition of a monetary claim pending elsewhere, or that the court's decision ultimately will enable plaintiff to receive money from the Government. *See King*, 395 U.S. at 4, 89 S.Ct. 1501 ("[C]ases seeking relief other than money damages from the [United States] Court of Claims have never been 'within its jurisdiction.' "). The basic rule that the Supreme Court announced in *King* is the law today and has not been changed by subsequent legislation. *See N.Y. Life Ins. Co. v. United States*, 118 F.3d

1553, 1556 (Fed.Cir.1997) (*quoting Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967) ("[I]t is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money.")). To the extent that a money judgment is presumed under the first count of plaintiff's complaint, plaintiff's second count for relief that the court declare that paragraph 5(d) of the Settlement Agreement (plaintiff's permanent ban from employment with the Army) to be "illegal, invalid and unenforceable," Compl. ¶ 23, is not incident to a money claim and cannot be entertained.

 Plaintiff identified a contract, the Settlement Agreement, that she entered into with the Army; thus, the court has jurisdiction over count one of plaintiff's complaint for breach of contract. 28 U.S.C. § 1491(a)(1). Plaintiff's challenges that the Army breached the Settlement Agreement are governed by contract principles. *Kasarsky v. MSPB*, 296 F.3d 1331, 1336 (Fed.Cir.2002). "It is axiomatic that a settlement agreement is a contract." *Greco v. Dep't of Army*, 852 F.2d 558, 560 (Fed.Cir.1988).

### II. *Summary judgment on breach claim*

#### 1. *Standards*

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The legal issues before the court may be resolved on summary judgment. *Long Island Sav. Bank, FSB v. United States*, 503 F.3d 1234, 1243–44 (Fed.Cir. 2007). Summary judgment is also appropriate when on a motion to dismiss under 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court." RCFC 12(d).[2]

---

**2.** The court did not receive proposed findings of fact from the parties; however, defendant has

shown that the majority of plaintiff's breach claims fail as a matter of pleading. *See* RCFC

"The moving party in a summary judgment motion has the burden to show 'that there is an absence of evidence to support the nonmoving party's case.' " *Crown Operations Int'l v. Solutia Inc.*, 289 F.3d 1367, 1377 (Fed.Cir.2002) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The benefit of all reasonable presumptions and inferences runs to the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed.Cir.2001); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984) (noting that non-moving party shall "receive the benefit of all applicable presumptions, inferences, and intendments").

### 2. *Breach of contract*

■ "To recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed.Cir.1989); *see also Citizens Fed. Bank v. United States*, 474 F.3d 1314, 1318 (Fed.Cir.2007) (affirming award of damages to plaintiff and selecting as appropriate causation standard "substantial factor" or "but for" theory "depends upon the facts of the particular case and lies largely within the trial court's discretion"); *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed.Cir.2005) (stating that "[d]amages for a breach of contract are recoverable where: (1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty."). Plaintiff must establish these elements by a preponderance of the evidence. *Gibson v. Dep't of Veterans Affairs*, 160 F.3d 722, 726 (Fed.Cir.1998) (affirming trial court's decision dismissing for lack of jurisdiction plaintiff's appeal his of removal from

position as supply clerk for Department of Veterans Affairs).

■ Plaintiff argues that the Army breached the Settlement Agreement by listing the agreement as authority for her promotion on the SF–50 form. Plaintiff also states that the performance evaluation raters signed, but did not date, plaintiff's performance evaluation. The Settlement Agreement provides in paragraph 5(c) that plaintiff "requests that the SF–50 effecting her resignation state that her *resignation* was tendered to 'pursue more rewarding career opportunities.' " Def.'s Br. filed Oct. 1, 2008, Ex. A at 3 (emphasis added). Paragraph 4(c) provides: "Pursuant to the [plaintiff's] request at paragraph 5c below, the Agency will record that the [plaintiff] *resigned* 'to pursue more rewarding career opportunities' in the remarks section of the Standard Form 50 documenting the action." *Id.* at 2 (emphasis added).

The Settlement Agreement appears to contemplate that the provision of "pursu[ing] more rewarding career opportunities" relates to reason for resignation, not promotion. *See* Ex. B at 6 (SF–50 form dated Jan. 31, 2007 (promotion)); Ex. C at 9 (SF–50 form dated Feb. 9, 2007 (promotion)); Ex. 1 at 1 (SF–50 form dated June 21, 2007 (resignation)). Nevertheless, assuming, *arguendo*, that plaintiff can establish that the Army breached its duty under the Settlement Agreement, plaintiff has not identified any action by the Army caused plaintiff harm or that any harm resulted from either the mistake made on the SF–50 form or by receiving an undated performance evaluation. *See Gibson*, 160 F.3d at 726. Although plaintiff alleges that she waited "several weeks" to receive the SF–50 form, plaintiff does not indicate that she missed any job opportunities or was denied a job because of the mistake on the SF–50 form. No injury resulting for these alleged breaches can be discerned from the facts.

■ Plaintiff cites to 20 C.F.R. § 10.15 to support her argument that the Army breach-

12(d) ("All parties must be given a reasonable opportunity to present all the material that is

pertinent to the motion.").

ed the Settlement Agreement by requiring plaintiff to waive her workers' compensation rights, and by failing to advise her that she was eligible for priority consideration for re-employment with respect to her workers' compensation claim. *See* 20 C.F.R. § 10.15 ("No employer or other person may require an employee or other claimant to enter into any agreement . . . to waive his or her right to claim compensation under the [Federal Employee Compensation Act, 5 U.S.C. §§ 8101–8193 (2000).] No waiver of compensation rights shall be valid.") As defendant points out, plaintiff has not identified any provision of the Settlement Agreement that has been breached, nor has she shown that she has incurred any damages arising from an alleged breach. The Settlement Agreement states that plaintiff's waiver of rights, promulgated under paragraph 5(b), "is not intended to impact any workers' compensation claims currently pending before the Department of Labor." Def.'s Br. filed Oct. 1, 2008, Ex. A at 3. Furthermore, as plaintiff concedes, she is still receiving "monthly benefits" for her workers' compensation claim. Pl.'s Br. filed Nov. 4, 2008, at 3.

Plaintiff also cites to 5 C.F.R. §§ 353.102, 353.301 (2008), and 5 U.S.C. § 8151 (2000), in support of her argument that she has a right to priority consideration for re-employment because of her work-related injuries. However, as defendant submits, Part 353 applies to employees that left employment "as a result of a compensable injury." 5 C.F.R. § 353.103(b) (2008). Plaintiff did not leave the Army because of her injuries; rather, she voluntarily resigned. Similarly, 5 U.S.C. § 8151 encompasses retention rights for employees who leave employment due to work-related injuries. For purposes of this action, plaintiff does not come within the class of plaintiffs contemplated by § 8151. *Jan's Helicopter*, 525 F.3d at 1309.

Regarding plaintiff's remaining claims for breach of the Settlement Agreement—incorrect filing of her resignation date, failure to timely process her resignation, and false information provided to VEC by the Office of Workers' Compensation—the briefs and supporting documentation do not reveal any fac-

tual interplay between the alleged breaches and possible resulting damages.

As an example, plaintiff alleges the actions by the Army caused her medical benefits to lapse, thereby preventing plaintiff from "purchas[ing] necessary medications." Compl. ¶ 10. Not controverting this allegation, defendant responds that, based on a notice sent to plaintiff on June 21, 2007, informing plaintiff of her right to continue coverage for an additional eighteen months, she could have made this election within 60 days of resignation and that the coverage would apply retroactively to encompass any period of lapsed health benefits. However, what cannot be ascertained on this record is that, if plaintiff was not informed of this right until June 21, 2007, the 31–day grace period would have expired two weeks before she received notice of the election to continue coverage. Thus, even if plaintiff could retroactively apply for health benefits, her insurance would have lapsed and could have prevented her from receiving a needed procedure or medication. Because these claims rely on operative facts, the court orders defendant to supplement its brief with proposed findings of fact on these issues pursuant to RCFC 56(c)(2), to which plaintiff must respond pursuant to RCFC 56(c)(3). *See* RCFC 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Count II of the complaint will be dismissed for lack of subject matter jurisdiction.

2. Defendant's motion for summary judgment on Count I is granted insofar as defendant is entitled to judgment on plaintiff's claims for breach, except with respect to the incorrect filing of plaintiff's resignation date, failure to timely process plaintiff's resignation, and false information provided to VEC by the Office of Workers' Compensation, as to which defendant shall supplement its briefing pursuant to RCFC 56(c)(2).

3. By January 5, 2009, defendant shall file its Proposed Findings of Uncontroverted

Fact pursuant to RCFC 56(c)(2), and any further briefing, not to exceed five pages, and by January 22, 2009, plaintiff shall file her counterstatement pursuant to RCFC 56(c)(3), and any further briefing, not to exceed five pages.