## NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, Plaintiff–Appellant,

v.

## UNITED STATES, Defendant–Appellee.

### No. 98–5048.

United States Court of Appeals, Federal Circuit.

Nov. 6, 1998.

William W. Osborne, Jr., Osborne Law Offices, P.C., of Washington, DC, argued for plaintiff–appellant. With him on the brief were Francis R.A. Sheed, and Marguerite L. Graf.

Todd M. Hughes, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant–appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director.

Before CLEVENGER, SCHALL, and BRYSON, Circuit Judges.

PER CURIAM.

Plaintiff-appellant National Air Traffic Controllers Association (NATCA), the collective bargaining representative of the federal air traffic controllers, is currently engaged in an arbitration proceeding with the Federal Aviation Administration (FAA). The issue before the arbitrator is whether air traffic controllers employed by the FAA are entitled to Sunday premium pay for hours of annual or sick leave taken on Sundays. While the arbitration was pending, NATCA filed suit in the Court of Federal Claims seeking a ruling that the air traffic controllers are entitled to premium pay for Sunday leave notwithstanding legislation purporting to affect the employees' right to premium pay. The court, however, dismissed NATCA's complaint, ruling that it did not have jurisdiction to grant the request for declaratory and injunctive relief. NATCA has appealed that dismissal to this court. We agree that the Court of Federal Claims may not grant the relief requested and we therefore affirm the dismissal of the complaint.

I

In 1993, this court held in *Armitage v. United States*, 991 F.2d 746 (Fed.Cir.1993), that the Sunday premium pay statute, 5 U.S.C. § 5546(a), required that federal police officers receive Sunday premium pay for hours of annual or sick leave taken on Sundays. Congress subsequently enacted the Department of Transportation and Related Agencies Appropriations Act for fiscal year 1995, which contained a provision forbidding any of the appropriated funds to be used to provide premium pay under 5 U.S.C. § 5546(a) "to any Federal Aviation Administration employee unless such employee actually performed work during the time corresponding to such premium pay." Pub.L. No. 103–331, 108 Stat. 2471, 2475 (1994). Identical language was included in the Department of Transportation and Related Agencies Appropriations Act for 1996. *See* Pub.L. No. 104–50, 109 Stat. 436, 440 (1995).

NATCA's collective bargaining agreement with the FAA provides that disputes under the agreement must be submitted for arbitration. In 1995, NATCA sought arbitration of its claim that the FAA was improperly denying Sunday premium pay to air traffic controllers who took sick or annual leave on Sundays. After the arbitration began, NATCA filed this action in the Court of Federal Claims, requesting a declaratory judgment that the language in the pertinent Appropriations Acts did not authorize the FAA to deny Sunday premium pay to the air traffic con-

trollers. The arbitrator stayed the arbitration pending a decision from the court.

■ The Court of Federal Claims dismissed the complaint on the ground that it was not authorized to grant equitable relief in a case, such as this one, in which the claim for monetary relief was not before the court but was pending in another forum. NATCA appealed to this court, arguing that the Tucker Act, 28 U.S.C. § 1491, authorizes the Court of Federal Claims to grant injunctive or declaratory relief in a case involving a request for monetary relief, even though the underlying claim for monetary relief is not before the court, but is legally committed to arbitration.

## II

■ Although the issue in this case is technically one of first impression, the outcome is governed by well-established principles. The Tucker Act defines the jurisdiction of the Court of Federal Claims and grants that court jurisdiction to

render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a). That statutory language has been interpreted to require that a plaintiff seeking to invoke the court's jurisdiction must present a claim for "actual, presently due money damages from the United States." *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Although the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, *see* 28 U.S.C. §§ 1491(a)(2), (b)(2), there is no provision giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court. *See Katz v. Cisneros*, 16 F.3d 1204, 1208 (Fed.Cir.1994). It is not enough that the court's decision may affect the disposition of a monetary claim

pending elsewhere, or that the court's decision will ultimately enable the plaintiff to receive money from the government. *See King*, 395 U.S. at 4, 89 S.Ct. 1501 ("cases seeking relief other than money damages from the Court of Claims have never been 'within its jurisdiction'").

■ The basic rule that the Supreme Court announced in *King* is still in effect and has not been changed by subsequent legislation. *See New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1556 (Fed.Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998), *quoting from Eastport SS. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (Ct.Cl.1967) ("[I]t is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money."); *Overall Roofing & Constr. Inc. v. United States*, 929 F.2d 687, 689 (Fed.Cir.1991) ("[T]he word 'claim' [in the Tucker Act] carries with it the historical limitation that it must assert a right to presently due money."). Although, as noted, Congress has authorized the Court of Federal Claims to grant equitable relief in certain limited circumstances, those circumstances do not include the general authority to grant equitable relief whenever a declaratory judgment or an injunction would assist a claimant in obtaining monetary benefits in another forum.

NATCA argues that the distinction between this case and *Armitage,* in which the Court of Federal Claims adjudicated a claim for Sunday premium pay by federal police officers, is "a purely procedural one." That is, the collective bargaining agreement in this case requires the claim for premium pay to be submitted to arbitration and not brought in the Court of Federal Claims, *see Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.1990), while in *Armitage* the claim for monetary damages could properly be brought before the Court of Federal Claims. The distinction between the two cases may indeed be "procedural," but it is important. The Court of Federal Claims has never been granted general authority to issue declaratory judgments, and to hold that the Court of Federal Claims may issue a declaratory judgment in this case,

unrelated to any money claim pending before it, would effectively override Congress's decision not to make the Declaratory Judgment Act applicable to the Court of Federal Claims.

None of the authorities on which NATCA relies are to the contrary. NATCA relies heavily on the Tenth Circuit's decision in *Eagle–Picher Industries, Inc. v. United States*, 901 F.2d 1530 (10th Cir.1990), but that case provides no support for its argument. In *Eagle–Picher*, the plaintiff sought equitable relief in a district court, and the government argued that the case should have been brought as a suit for money damages in the Claims Court. The court of appeals stated that a party " 'may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief where the thrust of the suit is to obtain money from the United States.' " 901 F.2d at 1532 (citation omitted). Thus, the court noted, the "test for determining if a case belongs in the Claims Court is whether or not 'the "prime objective" or "essential purpose" of the complaining party is to obtain money from the federal government.' " *Id.* (citation omitted). The language used by the court in *Eagle–Picher* describes the test for determining whether a plaintiff may bring an action for equitable relief in district court rather than being required to litigate his underlying claim in the Court of Federal Claims. But it does not by any means suggest that the Court of Federal Claims may assume jurisdiction of a case in which the plaintiff is not seeking money damages in that court. The same distinction applies to the language from the district court's opinion in *Saraco v. Hallett*, 831 F.Supp. 1154, 1165 (E.D.Pa.1993), *aff'd*, 61 F.3d 863 (Fed.Cir. 1995), upon which NATCA also relies. Finally, NATCA cites several cases in which district courts have granted declaratory relief on a legal issue relating to an underlying dispute that was pending before an arbitrator, but those cases are inapposite, since they are based on the Declaratory Judgment Act, 28 U.S.C. § 2201, which is not applicable to the Court of Federal Claims.

In sum, NATCA has asked the Court of Federal Claims for a declaratory judgment and an injunction, not for monetary relief, and in the circumstances of this case the Court of Federal Claims has no jurisdiction to grant the requested relief.

*AFFIRMED.*