**Quentin P. McCOLGIN Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

**No. 00–585C.**

United States Court of Federal Claims.

Oct. 19, 2001.

Quentin P. McColgin, appearing pro se, argued for plaintiff.

Lauren S. Moore, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, argued for defendant. With her on the briefs were Stuart E. Schiffer, Acting Assistant Attorney General, David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and Deborah A. Bynum, Assistant Director.

## OPINION

BRUGGINK, Judge.

Plaintiff seeks to recover relocation and other expenses related to his 1996 transfer from his position as an Administrative Law Judge ("ALJ") with the Department of Labor ("DOL") in Metairie, Louisiana, to an ALJ position with the Social Security Administration ("SSA") in Jackson, Mississippi. Pending are the parties' cross-motions for summary judgment and plaintiff's motion to strike.[1] Oral argument was held on October 16, 2001. There are no material issues of disputed fact. For the reasons set out below, defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and plaintiff's motion to strike is denied as moot.

---

1. Defendant filed a Motion to Dismiss on January 3, 2001, relying on the doctrine of collateral estoppel. The court denied the motion on May 7, 2001.

## BACKGROUND

By letter dated October 5, 1995, plaintiff Quentin P. McColgin, an ALJ with the DOL in Metairie, Louisiana, requested that Regional Chief Judge Richard Mueller, the Acting Atlanta Regional Chief ALJ with SSA's Office of Hearings and Appeals, consider him for any judgeships that would become available by the spring of 1996 in any of several SSA Hearings and Appeals offices located throughout the southeastern United States, including Jackson, Mississippi. By letter dated January 10, 1996, plaintiff wrote to Chief ALJ Charles R. Boyer and again requested consideration for any ALJ position that would become available in 1996 in any of three SSA offices throughout the Southeast, including the Jackson office. At the times of the requests, there were no job postings for positions in any of SSA's Hearings and Appeals offices designated in plaintiff's letters. By letter dated February 28, 1996, Chief ALJ Boyer notified plaintiff that, while there were currently no openings in any of the specified offices, plaintiff's application would receive consideration when SSA again hired ALJs in those offices.

On October 1, 1996, Janice Park, a Personnel Management Specialist at SSA's Office of Human Resources, Center for Personnel Policy and Staffing, contacted plaintiff by telephone and informed him that Rita Geier, SSA's Associate Commissioner for the Office of Hearings and Appeals, had approved his transfer to SSA.[2] The parties disagree as to whether, in that conversation, Ms. Park also told plaintiff that SSA would not pay for his relocation and travel expenses.[3]

Also on October 1, 1996, SSA submitted Standard Form 59, entitled "Request for Approval of Noncompetitive Action," to the Office of Administrative Law Judges of the Office of Personnel Management ("OPM"). Standard Form 59 indicated that plaintiff would be transferred from his position as an ALJ with the DOL in Metairie to an ALJ position with SSA in Jackson. Plaintiff's position title ("Administrative Law Judge"), occupational code, and salary would remain the same. OPM approved this request on October 4, 1996.

On October 15, 1996, Ms. Park again contacted plaintiff to determine whether he still desired to transfer to SSA. Plaintiff responded that he did. At this time, there was still no job posting for an ALJ vacancy in Jackson. Plaintiff's transfer to SSA nevertheless became effective on October 27, 1996. The transfer was authorized pursuant to 5 C.F.R. § 930.206, which permits non-competitive transfers under certain conditions.[4]

Apparently on October 10, 1996, plaintiff had been told by Vincent Boyles of Boyer's staff that he would not be eligible for recovering relocation expenses because he had requested the transfer. On October 21, 1996, prior to his transfer to SSA, plaintiff wrote to Boyer and requested "reconsideration" of this determination. By letter dated February 12, 1997, he responded to plaintiff as follows:

> [a]s you acknowledged in your request for reconsideration of the determination that you are not entitled to receive payment of relocation expenses associated with your transfer, you were informed prior to the effectuation of the transfer that you would

2. Plaintiff contends that Ms. Geier approved the transfer on or before September 27, 1996, as evidenced by her notation of that date by her signature on Standard Form 52, entitled "Request for Personnel Action," and that, in fact, plaintiff was actually selected for his position with SSA on or before that date—not October 4, the date of the Office of Personnel Management's approval of plaintiff's request. Because this dispute is not material to the outcome, we will assume plaintiff is correct.

3. Defendant, supported by a statement from Ms. Park, contends that, on October 1, she advised plaintiff that SSA would not reimburse his expenses. Plaintiff, in his affidavit, states that Ms.

Park notified him of this circumstance on October 9. This difference is not material to the outcome.

4. That section provides, in pertinent part:

> [a]n agency may transfer an administrative law judge from another agency with the prior approval of OPM on a noncompetitive basis in accordance with regular civil service procedures, provided the administrative law judge meets all current examination requirements for appointment as an administrative law judge under OPM Examination Announcement No. 318.

5 C.F.R. § 930.206 (1996).

not be entitled to relocation expenses because *the transfer was at your request.* (Emphasis added). By letter dated March 27, 1997, plaintiff once again wrote to Boyer, expressing disagreement with the determination that he was not entitled to relocation expenses and asking Boyer to forward a claim for relocation expenses to the General Services Administration Board of Contract Appeals ("GSBCA"). In this letter, plaintiff repeated that SSA had not informed him that he would not receive relocation expenses until October 10, 1996. This notice, plaintiff claimed, took place after OPM's approval of his transfer, his submission of his resignation to the DOL, and his actual selection to his position with SSA. It was prior, we note, however, to October 15, when plaintiff confirmed that he wished to proceed with the transfer, and prior to October 27, the date OPM effectuated the transfer.

The GSBCA issued a decision on January 29, 1998, affirming SSA's denial of plaintiff's claim. The board determined that SSA had the authority, under 5 C.F.R. §§ 335.103(c)(3) and 930.206, to except plaintiff's transfer from competitive procedures. It also found that plaintiff's transfer clearly resulted from SSA honoring his "requests for a transfer and using noncompetitive procedures, and not because of a determination that there was a need to fill the specific vacancy with a particular individual." GSBCA 14349–RELO. The GSBCA denied plaintiff's motion for reconsideration on March 13, 1998. On September 29, 2000, plaintiff initiated this lawsuit.

Plaintiff bases his claim for relief on two provisions within Title 5 of the United States Code: section 3330, entitled "Government-wide list of vacant positions," and section 5724, entitled "Travel and transportation expenses of employees transferred; advancement of funds; reimbursement on commuted basis."

Section 5724 directs that, when the head of an agency authorizes or approves, the agency shall pay, from government funds, "the travel expenses of an employee transferred in the interest of the Government from one official station or agency to another for permanent duty, and the transportation expenses of his immediate family." 5 U.S.C. § 5724(a)(1). This obligation is limited, however:

When a transfer is made primarily for the *convenience or benefit of an employee ... or at his request,* his expenses of travel and transportation and the expenses of transporting, packing, crating, temporarily storing, draying, and unpacking of household goods and personal effects may not be allowed or paid from Government funds.

5 U.S.C. § 5724(h) (emphasis added).

Plaintiff attempts to avoid the import of this language by urging the court to re-characterize what in fact occurred to what he says *should* have occurred, namely, that the Jackson slot should be treated as having been advertised. He contends that the court can invoke the equitable remedy of *nunc pro tunc* to achieve this end. Such relief is justified, he claims, because, at the "recruiting stage" of the process resulting in his noncompetitive appointment and transfer to SSA, that agency violated the posting requirements. He contends that SSA should therefore be deemed to have posted a vacancy announcement. His application would then be considered as submitted in response to the deemed-posted vacancy announcement—presumably in the interest of the government—thus, entitling him to relocation expenses under section 5724(a)(1). Additionally, plaintiff asserts that SSA failed to timely inform him of its determination that he would not receive his relocation expenses by not notifying him until October 10, 1996 (six days after OPM approved his transfer to Jackson), in violation of the SSA Personnel Manual for Supervisors, section 7.22.02(c).

Defendant argues that SSA did not violate the posting requirements and that, in any event, it was statutorily prohibited from reimbursing plaintiff for his relocation expenses because plaintiff requested his appointment to his ALJ position in Jackson. Defendant challenges the applicability of the equitable remedy of *nunc pro tunc* for two reasons. First, because it is based on the "highly speculative" assumption that plaintiff would have been selected for appointment to the Jackson office if his position had been filled competitively. Second, if a vacancy announcement were deemed to have preced-

ed the transfer, it would amount to the court's invocation of equitable powers which, according to defendant, the court does not have. Moreover, defendant asserts that plaintiff was notified in a timely manner on October 1 and again on October 9 and that, even if he was not notified until October 10, he still received "proper" notification (only six days after OPM's approval of his transfer) in accordance with SSA's manual.

Plaintiff attempts to demonstrate the existence of a material issue of fact as to whether SSA made a determination that his transfer was primarily for his benefit. In reply, defendant contends that, even assuming that plaintiff's transfer was not for his own benefit, the fact that he requested the transfer precludes the award of relocation expenses under Section 5724(h).[5]

## DISCUSSION

Plaintiff's claim fails because two facts are uncontested. First, he requested his transfer. Plaintiff wrote Regional Chief Judge Mueller on October 5, 1995, requesting that he "be considered for any judgeships that may become available by next spring in your offices located in ... Jackson, MS." He also added that "I am confident that I would become a productive and capable judge in your agency in a relatively short period of time." On January 10, 1996, plaintiff wrote to Chief ALJ Boyer in order "to express my continued interest in transferring from my present position as an administrative law judge with the Dept. of Labor, to the office of Hearings and Appeals." He added that "I would like to be considered for any administrative law judge position that becomes available this year in your offices located in ... Jackson, MS."

A second fact is also uncontested. The agency never posted, and plaintiff never competed for, the job vacancy that he filled in Jackson. The result is that the court is left with the applicability of the exception in section 5724 for employees who request transfer.

Although these two facts would appear to be fatal to plaintiff's claim, he urges the court to ignore their import by deeming a vacancy to have been announced.[6] We decline to do

---

**5.** In his September 19, 2001 Reply to Defendant's Response to Cross–Motion for Summary Judgment and Objection to Attempt to Amend Defendant's Motion for Summary Judgment, at pages 1–3, plaintiff objects to defendant's presentation of a new ground for dismissal of the complaint in defendant's August 27, 2001 Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment Upon the Issue of Liability, and Defendant's Response to Plaintiff's Cross–Motion for Summary Judgment. In that document, at pages 5–7, defendant asserted that the fact that plaintiff requested the transfer was a sufficient reason for SSA's denial of his relocation expenses. At page 2 of his Reply, plaintiff asserts that defendant amended its motion without obtaining authorization from the court and that it would be unfair and prejudicial to plaintiff to permit the proposed amendment.

Plaintiff overlooks the facts that he was aware of Section 5724(h), as evidenced by his reference to it in the original complaint; that defendant set out Section 5724(h) in its June 28, 2001 Motion for Summary Judgment, at page 12, and included the "at his request" language of the statute in bold type in that same document; and that plaintiff mentioned both the "benefit" language and the "at his request" language on page 10 of his July 31, 2001 Response to Defendant's Motion for Summary Judgment and Cross–Motion for Summary Judgment. Thus, defendant did not amend its argument; instead, it has maintained

the same defenses throughout this litigation. Moreover, plaintiff had ample opportunity to, and did, address this issue in his July 31 (at page 10) and September 19 (at 11) briefs.

**6.** The government argues that SSA was not legally obligated to post its job vacancies under Title 5 of the Code of Federal Regulations. It relies on section 335.103(c)(3), which exempts an agency from having to follow competitive procedures when an employee transfers to a position having promotion potential equivalent to that of a position he or she already holds. Plaintiff responds that the exceptions of section 335.103 only apply to the competitive procedures listed in 335.103, and not to posting requirements. Although the government appears to have the better of the argument, we need not address it. Moreover, even assuming that plaintiff is correct, and SSA was obligated to post the vacancy, plaintiff would not have standing to raise this issue. We view the posting requirements on which plaintiff relies as for the benefit of those seeking appointment as an ALJ; they are intended to foster competition. Plaintiff was notified of the job by SSA on October 1, 1996. Therefore, the failure of SSA to post did not harm him. Moreover, plaintiff conceded during oral argument that any posting by SSA may have triggered competition for plaintiff's job in Jackson and that there would be no assurance that plaintiff would have been appointed.

so. Under no circumstances can the court's equitable powers generate a right to money when doing so would be completely at odds with a statutory prohibition.

The Tucker Act defines this court's jurisdiction and grants it the power to render judgment upon any claim against the United States

> founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). This means that a plaintiff seeking to invoke the court's jurisdiction must present a claim for "actual, presently due money damages from the United States." *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Insofar as relevant here, plaintiff's recovery succeeds or fails based on an application of the relevant money-mandating statute, 5 U.S.C. § 5724.

It is no answer, as plaintiff suggests, to invoke equitable principles. As the United States Court of Appeals for the Federal Circuit noted in *National Air Traffic Controller's Ass'n v. United States:*

> [a]lthough the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, *see* 28 U.S.C. §§ 1491(a)(2), (b)(2), there is no provision giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court. It is not enough that the court's decision may affect the disposition of a monetary claim pending elsewhere, *or that the court's decision will ultimately enable the plaintiff to receive money from the government.*

160 F.3d 714, 716 (Fed.Cir.1998) (emphasis added) (citations omitted). Application of an equitable remedy here cannot create, out of whole cloth, a statutory claim against the Treasury.

We are thus left with the following facts. Plaintiff actively sought a position with SSA's Jackson office. His letters are clearly requests for transfer to a location which, it is undisputed, had no posted vacancy. We are also entitled to draw the inference that plaintiff would not have attempted to transfer to the Jackson office if it were not for his own benefit. He falls within the letter of section 5724(h) and SSA may not, under that section, be reimbursed for his relocation expenses. For the same reason, plaintiff's alternate argument, that he was not promptly notified that SSA would not reimburse his expenses, is immaterial.[7] The statute precludes his reimbursement.

## CONCLUSION

Defendant's motion for summary judgment is granted. Plaintiff's cross-motion for summary judgment is denied. Plaintiff's motion to strike is denied as moot. The clerk is directed to enter judgment accordingly. Each side to bear its own costs.

---

7. In any event, during oral argument, plaintiff disavowed any contention that the government is estopped from asserting section 5724(h) as a defense.