**Ahmed HALIM, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 12–5 C.**

United States Court of Federal Claims.

Sept. 24, 2012.

---

Anu Kemet, College Park, MD, for plaintiff.

Anuj Vohra, Trial Attorney, with whom were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Stacey E. Singleton, Trial Attorney, United States Department of Housing and Urban Development, Washington, DC, of counsel.

## ORDER

HEWITT, Chief Judge.

This case involves breach of contract claims by Ahmed Halim, plaintiff, against the United States, defendant, acting through its Department of Housing and Urban Development (HUD). *See generally* Third Am. Compl. for Breach of Contract (amended Complaint or Am. Compl.), Docket Number (Dkt. No.) 9. The amended Complaint claims that HUD breached the following four contracts: a housing assistance payment (HAP) contract associated with an apartment complex in Schenectady, New York (Schenectady Property), *id.* ¶¶ 4–9; a Section 8 HAP sales contract associated with the Nichols Townhouses in Flushing, Ohio (Flushing Property), *id.* ¶¶ 10–13; a foreclosure sale use agreement associated with the Beacon Light Apartments in Henderson, North Carolina (Henderson Property), *id.* ¶¶ 14–21; and a HAP contract associated with the Meadowbrook Apartments in Meridian, Mississippi[1]

(Meadowbrook Property), *see id.* ¶¶ 28–33. The amended Complaint also makes various requests for declaratory and injunctive relief. *See id.* ¶¶ 23, 25, 27, C, F.[2]

Plaintiff originally filed this case in the United States District Court for the District of Columbia (District Court) on November 8, 2010. *See* Compl. for Breach of Contract, *Halim v. U.S. Dep't of Hous. & Urban Dev.,* No. 10–1916 (D.D.C. Nov. 8, 2010) (District Court Complaint or District Court Compl.), Dkt. No. 1–1, at 5.[3] On October 11, 2011 the District Court found that the United States Court of Federal Claims (Court of Federal Claims or this court) had exclusive jurisdiction over plaintiff's claims, District Court Order of Oct. 11, 2011, Dkt. No. 1–1, at 4, and plaintiff's case was transferred to this court on January 4, 2012, *see generally* Notice, Dkt. No. 1. On February 8, 2012 plaintiff then filed with this court a complaint titled Amended Complaint for Breach of Contract, Dkt. No. 5, which was superseded by plaintiff's May 30, 2012 filing of the Third Amended Complaint for Breach of Contract. Notwithstanding the titles used by plaintiff, the court refers to the Amended Complaint for Breach of Contract as the original Complaint (or Compl.) and the Third Amended Complaint for Breach of Contract as the amended Complaint (or Am. Compl.).

Also before the court—in addition to the original Complaint and the amended Complaint—are Defendant's Motion to Dismiss for Lack of Jurisdiction (defendant's Motion or Def.'s Mot.), Dkt. No. 13, and attached

---

1. Plaintiff's amended Complaint does not state where the Meadowbrook Property is located. *See* Third Am. Compl. for Breach of Contract (amended Complaint or Am. Compl.), Docket Number (Dkt. No.) 9, *passim.* Defendant asserts that the Meadowbrook Property is located in Meridian, Mississippi. Def.'s Mot. to Dismiss for Lack of Jurisdiction (defendant's Motion or Def.'s Mot.), Dkt. No. 13, at 2, 5; *accord* Def.'s App., Dkt. No. 13–1, at A13 (Compl., *Halim v. Donovan,* No. 12–384 (D.D.C. Mar. 9, 2012) (pro se Complaint)) (stating that plaintiff owns property in Meridian, MS). Plaintiff does not dispute this contention. *See* Pl.'s Opp'n to Mot. to Dismiss (plaintiff's Response or Pl.'s Resp.), Dkt. No. 15, *passim.*

2. The amended Complaint consists of seven unnumbered pages, with thirty-three numbered paragraphs appearing on the first six pages and seven paragraphs labeled A through G appearing on the sixth and seventh pages. *See generally* Am. Compl. For clarity, the court cites to the numbered and lettered paragraphs.

3. Certified copies of the docket sheet, complaint and transfer order (collectively, transfer documents) associated with *Halim v. U.S. Dep't. of Hous. & Urban Dev.,* No. 10–1916 (D.D.C. Nov. 8, 2010) are attached to the Clerk's Office Notice, *see* Dkt. No. 1–1. When citing to any of the transfer documents, the court cites to the Bates number that appears at the top of the referenced page.

appendix[4] (Def.'s App.), Dkt. No. 13–1, filed June 29, 2012; Plaintiff's Opposition to Motion to Dismiss (plaintiff's Response or Pl.'s Resp.), Dkt. No. 15, filed July 30, 2012; and Defendant's Reply in Support of its Motion to Dismiss for Lack of Jurisdiction (defendant's Reply or Def.'s Reply), Dkt. No. 16, filed August 15, 2012.

Additionally, on March 9, 2012, plaintiff filed with the District Court a pro se complaint, see Def.'s App. A11 (Compl., *Halim v. Donovan*, No. 12–384 (D.D.C. Mar. 9, 2012)), which the court refers to as the pro se Complaint (or Pro Se Compl.). The pro se Complaint is addressed in defendant's Motion, see Def.'s Mot. 7–13, and is discussed below in Parts I.B and III.A.

Defendant contends that plaintiff has claims related to the Schenectady, Meadowbrook and Henderson Properties pending in District Court, and that 28 U.S.C. § 1500 (2006), as interpreted by *United States v. Tohono O'Odham Nation* (*Tohono*), —— U.S. ——, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011), bars this court from exercising jurisdiction over these claims. Def.'s Mot. 7–13. Accordingly, defendant moves to dismiss the claims associated with the Schenectady, Meadowbrook and Henderson Properties under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). *Id.* at 13. Defendant also moves to dismiss plaintiff's requests for declaratory and injunctive relief, arguing that the limited circumstances under which this court has authority to grant equitable relief are not present in this case. *Id.* at 13–16. Finally, as to those claims over which the court finds it possesses jurisdiction, defendant requests that they be "stayed pending the outcome of the district court proceedings." Def.'s Reply 3; see Def.'s Mot. 13 n. 10.

Plaintiff's Response offers little substantive support for its request that the court deny defendant's Motion. *See* Pl.'s Resp. 2 (arguing only that "[w]hile it is true [p]laintiff filed a complaint in the United States District Court, the substance of [p]laintiff's allegations in that matter involve civil rights claims"). Plaintiff's Response also "seeks to have this matter stayed pending the outcome of the matter in [the] District Court," or, in the alternative, "to have this matter proceed on those counts not involving common[ ] allegations of facts or causes of action as outlined in the United States District Court Complaint." *Id.*

For the following reasons, defendant's Motion is DENIED–IN–PART and GRANTED–IN–PART, and the parties' request to stay the proceedings is GRANTED.

## I. Background

### A. Plaintiff's Four Claims[5]

#### 1. Schenectady Property Claim

The amended Complaint states that plaintiff entered into a HAP contract with HUD involving the Schenectady Property on or about July 25, 2006. Am. Compl. ¶ 4. The HAP contract required that the apartments for which plaintiff received housing assistance payments meet HUD's Uniform Physical Condition (UPC) Standards. *Id.* ¶ 5. The amended Complaint states that plaintiff spent $1.5 million to ensure that the apartments met the UPC Standards, and that, in March of 2008, all forty of the Schenectady Property apartments passed a UPC Standards inspection. *Id.* ¶ 6. However, "HUD determined that [p]laintiff failed to maintain the [Schenectady Property] in accordance with the Owner Certification section of the

---

4. When citing to the appendix attached to defendant's Motion, see Def.'s App., the court cites to the page numbers provided by defendant that appear at the bottom of the referenced page.

5. The court's understanding of plaintiff's claims is limited by what is provided in the amended Complaint and plaintiff's Response, neither of which appears to have been carefully prepared. *See generally* Am. Compl.; Pl.'s Resp. The court finds the amended Complaint difficult to follow, see *infra* note 6 & *infra* Part I.A.1 (identifying

inconsistencies and ambiguous claims), lacking in relevant factual information, see *supra* note 1 & *infra* Part I.A.2 (discussing the amended Complaint's failure to provide certain relevant factual information), and reliant on statutes that do not apply to this court, see *infra* Part II.A.1 (noting that the amended Complaint invokes 28 U.S.C. § 1331 (2006), which does not apply to this court); *infra* Part II.A.3 (discussing the amended Complaint's reliance on 28 U.S.C. § 2201 (2006), which does not apply to this court).

HAP contract, and [p]laintiff's HAP contract was terminated." *Id.* ¶ 7. The amended Complaint claims that "HUD should not have revoked the [p]laintiff's contract because the [p]laintiff was not failing to maintain the property at issue, nor was [p]laintiff in violation of the [UPC] Standards." *Id.* ¶ 9. The amended Complaint further states that plaintiff "escrowed approximately $405,000[,] of which approximately half was released," and that "[t]he remaining balance is due and owing." *Id.* ¶ 8. It is not clear to the court how the escrowed funds relate to the HAP contract.

The amended Complaint claims that HUD's termination of the "HAP contract was a breach of contract." *Id.* The amended Complaint seeks judgment "in the amount [of] [p]laintiff's deposit into escrow for the Schenectady [Property]" plus interest,[6] *id.* ¶ A, and "the full balance due and owing . . . on the HAP contract[ ] for . . . Schenectady," *id.* ¶ E. The amended Complaint also seeks a declaration from the court that "HUD has failed to comply with its own regulations regarding the termination of [the] HAP contract[ ] and that the termination was illegal and contrary to law and therefore a nullity." *Id.* ¶ 23. The amended Complaint further requests that the "[c]ourt declare the HAP [contract] valid and enforceable," but does not indicate for which HAP contract it seeks this declaration. *See id.* ¶ F. The court understands that the amended Complaint requests the court to declare that the HAP contracts associated with both the Schenectady and Meadowbrook Properties are "valid and enforceable."

### 2. Flushing Property Claim

The amended Complaint states that "[p]laintiff submitted the highest bid of $262,000.00 with an earnest money deposit of $50,000 on the . . . Flushing Property," *id.* ¶ 10, but does not state on what date this event occurred, *see id.* ¶¶ 10–13 (discussing plaintiff's Flushing Property claim). According to the amended Complaint, "[p]laintiff

was qualified to manage the Flushing Property, and submitted the required paperwork prior to the closing on the property." *Id.* ¶ 11. However, "HUD determined that [p]laintiff did not have the experience to manage a property that was being sold with a project-based Section 8 HAP Contract." *Id.* ¶ 12; *see* Def.'s Mot. 3 (explaining that HUD intended to "provide rental assistance under a Section 8 HAP contract" to the Flushing Property). The amended Complaint states that HUD informed plaintiff that his $50,000 earnest money deposit "would not be returned or refunded, but would be retained by [HUD] as liquidated damages." Am. Compl. ¶ 13.

The amended Complaint claims that HUD violated the Section 8 HAP sales contract associated with the Flushing property by determining that plaintiff lacked the experience to manage a property being sold under a "project-based Section 8 HAP Contract," *see id.* ¶ 12, and by failing to return to plaintiff his earnest money deposit, *see id.* ¶ 24. The amended Complaint seeks judgment in the amount of plaintiff's earnest money deposit of $50,000, plus interest. *Id.* ¶ B. The amended Complaint also seeks a declaration from the court that "HUD has failed to comply with its own regulations regarding its decision that [p]laintiff lacked experience to manage the Flushing Property, and that decision was illegal and contrary to law and therefore a nullity." *Id.* ¶ 25.

### 3. Henderson Property Claim

The amended Complaint states that, in March of 2006, plaintiff submitted the highest bid on the Henderson Property at a foreclosure sale. *See id.* ¶¶ 14–15. The foreclosure sale use agreement required plaintiff to conduct approximately $5.2 million in repairs on the property by March of 2008. *Id.* ¶ 15. However, "the City of Henderson did not permit the [p]laintiff to rehabilitate the [Henderson] [P]roperty because the City found that the existing buildings constitute[d]

---

**6.** The amended Complaint claims that plaintiff "escrowed approximately $405,000," Am. Compl. ¶ 8, but requests $1,500,000 for "the amount [p]laintiff[ ] deposit[ed] into escrow," *id.* ¶ A. It is unnecessary for the court to address the

differing amounts at this stage of the proceedings because a resolution of the different escrow amounts would not affect the court's ruling on defendant's Motion.

health and safety hazards to the adjoining property and that the [Henderson] [P]roperty could be properly used by demolishing the existing buildings." *Id.* ¶ 16. The amended Complaint states that, in December of 2009, plaintiff had a discussion with the then Acting Director of Asset Management at HUD, during which plaintiff agreed to deed the Henderson Property back to HUD in return for the purchase price and his line of credit funds, *see id.* ¶ 17; however, "HUD has not returned [p]laintiff's purchase price in exchange for the deed to the Henderson Property," *id.* ¶ 18. The amended Complaint further claims that the Henderson City Council wishes to demolish the Henderson Property apartments using plaintiff's line of credit funds "of approximately[ ]$1,300,000." *Id.* ¶ 19; *cf.* ¶ 20 (claiming that "neither the City of Henderson nor HUD[ ] own the Henderson Property and therefore they have no right to demolish the property or use [p]laintiff's money for any purpose").

The amended Complaint contends that HUD's failure to "return[ ] [p]laintiff's purchase price in exchange for the deed to the Henderson Property" violates the foreclosure sale use agreement. *See id.* ¶ 18. The amended Complaint seeks the release of plaintiff's line of credit funds and judgment in the amount of the purchase price of the Henderson Property plus interest. *Id.* ¶ D. The amended Complaint also seeks a declaration from the court that "HUD has failed to comply with its own contract, and that the decision not to return the purchase price was illegal and contrary to law and therefore a nullity." *Id.* ¶ 27; *see id.* ¶ 26. Plaintiff further requests that the court "enjoin [d]efendant from demolishing the Henderson Property and using [p]laintiff's [line of credit] money for any purposes." *Id.* ¶ C.

#### 4. Meadowbrook Property Claim

The amended Complaint states that plaintiff entered into a HAP contract and foreclosure sale use agreement with HUD involving the Meadowbrook Property on approximately January 19, 2007. *Id.* ¶ 28. The HAP contract required that the apartments for which plaintiff received housing assistance payments meet HUD's UPC Standards. *Id.*

¶ 29. The amended Complaint states that despite the significant expenditures and repairs made by plaintiff to meet the UPC Standards, *see id.* ¶¶ 30–31, "HUD determined that [p]laintiff failed to maintain the [Meadowbrook] [P]roperty in accordance with the [ ] HAP [c]ontract, and [p]laintiff's HAP contract was terminated," *id.* ¶ 31; *see id.* ¶ 30 (stating that "on February 2, 2012 HUD alleged that the [p]laintiff was in default"). The amended Complaint contends that "HUD should not have revoked the [p]laintiff's contract because the [p]laintiff was not failing to maintain the property at issue, nor was [p]laintiff in violation of the [UPC] Standards." *Id.* ¶ 33.

The amended Complaint claims that HUD's termination of the "HAP contract was a breach of contract," *id.* ¶ 32, and seeks judgment "for the full balance due and owing ... on the HAP contract[ ] for Meadowbrook," *id.* ¶ E. The amended Complaint also requests that the "[c]ourt declare the HAP [contract] valid and enforceable." *Id.* ¶ F.

### B. Procedural History

On November 8, 2010 plaintiff filed a complaint in the District Court that included plaintiff's Schenectady, Flushing and Henderson Property claims. *See* District Court Compl. 5–7; *supra* Parts I.A.1–3. On May 27, 2011 HUD filed a motion to dismiss the District Court Complaint for lack of subject matter jurisdiction. *See* District Court Order of Oct. 11, 2011, at 3. The District Court granted HUD's motion to dismiss on October 11, 2011, finding that the Court of Federal Claims had exclusive jurisdiction over plaintiff's claims. *Id.* at 4 (citing, inter alia, 28 U.S.C. § 1491(a)(1) (2006)). The case was transferred to this court on January 4, 2012. *See generally* Notice.

On February 8, 2012 plaintiff filed the original Complaint in this court, which included plaintiff's Schenectady, Flushing and Henderson Property claims. *See generally* Compl.; *supra* Parts I.A.1–3. On May 30, 2012 plaintiff filed the amended Complaint, which—in addition to those claims made in the original Complaint—includes plaintiff's Meadowbrook Property claim and the requests for money damages and declaratory

judgment associated with the Meadowbrook Property claim. *See* Am. Compl. ¶¶ 28–33, E–F; *supra* Part I.A.4. The amended Complaint also includes a request that HUD "immediately release the line of credit" associated with the Henderson Property. Am. Compl. ¶ D.

On March 9, 2012 plaintiff filed his pro se Complaint in the District Court, naming as defendants Secretary Shaun Donovan of HUD and the city council, city manager and mayor of Henderson, North Carolina. *See* Def.'s App. A11 (Pro Se Compl.). Invoking Title VI of the Civil Rights Act of 1964, plaintiff claims that the defendants discriminated against him as a foreign-born Muslim in dealings associated with the Schenectady, Meadowbrook and Henderson Properties. *See id.* at A12–A15.

## II. Legal Standards

### A. Subject Matter Jurisdiction

#### 1. The Tucker Act

Subject matter jurisdiction is a threshold matter, which the court must determine at the outset of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1365 (Fed.Cir.2007). The amended Complaint's reliance on 28 U.S.C. § 1331 as a source of this court's jurisdiction is in error. *See* Am. Compl. ¶ 3. Section 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2006). "The United States Court of Federal Claims … is not a United States District Court and, therefore, does not have jurisdiction over claims arising under 28 U.S.C. § 1331." *Hall v. United States*, 69 Fed.Cl. 51, 56 (2005); *see Faulkner v. United States*, 43 Fed.Cl. 54, 55 (1999) ("The Court of Federal Claims does not have federal question jurisdiction under 28 U.S.C. § 1331.").

It is the Tucker Act that establishes and limits the jurisdiction of this court. *See* 28 U.S.C. § 1491. The Tucker Act provides this court with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id.* § 1491(a)(1).

The Tucker Act provides this court with jurisdiction only over claims "against the United States." *Id.* The amended Complaint, however, names HUD and the Attorney General of the United States as defendants. *See* Am. Compl. 1. Because both of plaintiff's named defendants are agents of the United States, the court will construe the complaint as a claim against the United States. *Cf.* Def.'s Mot. 7 n. 4 (stating that "but for the jurisdictional defects" alleged by defendant in defendant's Motion, "this [c]ourt may consider [plaintiff's] breach of contract allegations against the United States pursuant to its Tucker Act jurisdiction"). To the extent that defendant moves to dismiss HUD and the Attorney General of the United States as named defendants in this case, *id.* at 6–7, defendant's Motion is GRANTED–IN–PART.

#### 2. 28 U.S.C. § 1500

Even if a plaintiff has met the jurisdictional requirements of the Tucker Act, subject matter jurisdiction may nevertheless be barred by 28 U.S.C. § 1500. *Kingman Reef Atoll Invs., L.L.C. v. United States*, 103 Fed.Cl. 660, 685 (2012). Section 1500 states in full:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in any respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. As interpreted by the United States Supreme Court (Supreme Court), section 1500 "is more straightforward than its complex wording suggests." *Tohono*, 131 S.Ct. at 1727. In the view of the

Supreme Court, section 1500 simply provides that "[t]he [Court of Federal Claims] has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." *Id.* Therefore, to determine whether section 1500 applies, the court must assess whether the plaintiff "has pending in any other court any suit or process against the United States," 28 U.S.C. § 1500, and, if so, whether the claims arise out of the same operative facts, *see Tohono,* 131 S.Ct. at 1730; *Trusted Integration, Inc. v. United States,* 659 F.3d 1159, 1163–64 (Fed.Cir. 2011). If the court determines that both conditions are met, the court must dismiss the complaint for lack of subject matter jurisdiction. *See Tohono,* 131 S.Ct. at 1727 ("The [Court of Federal Claims] has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents.").

### 3. The Declaratory Judgment Act

■ The amended Complaint's reliance on the Declaratory Judgment Act, 28 U.S.C. § 2201 (2006), as authority for this court to grant the requested declaratory relief and injunctive relief is also in error. *See* Am. Compl. ¶¶ 3, 23, 25, 27, C, F. The Declaratory Judgment Act provides, in part: "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Declaratory Judgment Act, however, does not apply to this court. *See Nat'l Air Traffic Controllers Ass'n v. United States (Nat'l Air Traffic),* 160 F.3d 714, 716–17 (Fed.Cir.1998) (stating that Congress decided "not to make the Declaratory Judgment Act applicable to the Court of Federal Claims"); *Tchakarski v. United States,* 69 Fed.Cl. 218, 221 (2005) ("[T]he [Declaratory Judgment] Act does not give jurisdiction to the United States Court of Federal Claims to grant a declaratory judgment.").

■ The Court of Federal Claims primarily exists "as a forum for determining whether monetary relief shall be awarded for non-tort claims brought against the United States." *Pellegrini v. United States,* 103 Fed.Cl. 47, 53 (2012). This court has never been afforded the general authority to issue declaratory judgments or to grant injunctive relief. *See Nat'l Air Traffic,* 160 F.3d at 716–17 (stating that "the Court of Federal Claims has never been granted general authority to issue declaratory judgments"); *Marathon Oil Co. v. United States,* 17 Cl.Ct. 116, 119 (1989) ("[T]he [United States Claims Court] [7] specifically does not have general power to enter declaratory or injunctive relief." (footnote added)). Rather, this court may only award equitable relief under certain statutorily defined circumstances.[8] *See Suess v. United States,* 33 Fed.Cl. 89, 92

---

7. The United States Claims Court (Claims Court) was established by the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 105(a), 96 Stat. 25 (amending 28 U.S.C. § 171(a)). *Minesen Co. v. McHugh,* 671 F.3d 1332, 1341 n. 2 (Fed.Cir.2012). The "Claims Court inherited the jurisdiction of its predecessor, the United States Court of Claims [ (Court of Claims) ]." *Id.; see Banks v. United States,* 102 Fed.Cl. 115, 152 n. 44 (2011) (stating that the "Court of Claims is the predecessor court to this court and a predecessor to the United States Court of Appeals for the Federal Circuit"). "Congress renamed the [Claims Court] the United States Court of Federal Claims by the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902, 106 Stat. at 4516." *Minesen Co.,* 671 F.3d at 1341 n. 2.

8. Although the court cannot award equitable relief absent statutory authorization, where the relief sought is monetary, the court may "exercis[e]

equitable powers as an incident of [its] general jurisdiction." *Pauley Petroleum Inc. v. United States (Pauley),* 219 Ct.Cl. 24, 38, 591 F.2d 1308, 1315 (1979) (en banc) (internal quotation marks omitted); *Suess v. United States,* 33 Fed.Cl. 89, 92 (1995) ("[P]arties can use equitable defenses and can maintain at least some equitable actions before this court, so long as the relief sought is monetary.") For example, this court "has relied on reformation of contract as the basis for a money judgment, used equitable accounting procedures to render a money judgment, ... heard suits for rescission of contract due to mutual mistake or frustration, and heard shareholder derivative suits despite their being historically based in equity." *Ambase Corp. v. United States,* 61 Fed.Cl. 794, 800 (2004) (internal citations omitted); *see Pauley,* 219 Ct.Cl. at 38, 591 F.2d at 1315 ("Equitable doctrines can be employed incidentally to this court's general monetary jurisdiction either as equitable procedures to arrive at a money judgment or as substantive principles

(1995) ("[A]bsent statutory authorization, this court cannot grant equitable relief.")

The limited circumstances under which this court may award equitable relief are not present here. This court has statutory authorization to award equitable relief in certain types of tax cases, *see* 28 U.S.C. § 1507 (2006); in disputes under the Contract Disputes Act of 1978 (CDA),[9] *see* 28 U.S.C. § 1491(a)(2); as part of its bid protest jurisdiction, *see* 28 U.S.C. § 1491(b)(1)–(2); and— in cases where the equitable relief "is tied and subordinate to a money judgment," *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir.1998)—the court may "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records," 28 U.S.C. § 1491(a)(2); *accord Pellegrini*, 103 Fed.Cl. at 54. This case is not a tax case, does not invoke either the CDA or the court's bid protest jurisdiction, and the amended Complaint's requests for declaratory and injunctive relief do not fall within the categories of relief allowed under 28 U.S.C. § 1491(a)(2). *See* Am. Compl. ¶¶ 23, 25, 27, C, F.

■ "Labeling an argument 'equitable' does not, however, automatically deprive this Court of jurisdiction." *Ambase Corp. v. United States*, 61 Fed.Cl. 794, 797 (2004). For example, the court notes that it has the "authority to issue rulings of law declaring the rights of parties under a contract where such rulings are necessary to the resolution of a claim for money presently due and owing." *Hydrothermal Energy Corp. v. United States* (*Hydrothermal*), 26 Cl.Ct. 7, 16 (1992); *see Doko Farms v. United States*, 13 Cl.Ct. 48, 60 (1987) (stating that the "Court only has jurisdiction" to declare a plaintiff's rights when doing so is "incidental and subordinate to" a money judgment). That is, "merely because the court must make a ruling of law

... in order to arrive at a money judgment does not render this court's decision a 'declaratory judgment'...." *Pauley Petroleum Inc. v. United States* (*Pauley*), 219 Ct.Cl. 24, 38, 591 F.2d 1308, 1315 (1979) (en banc).

### B. Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

"When considering a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the [c]ourt accepts as true the undisputed allegations in the complaint and draws all reasonable inferences in favor of the plaintiff." *Low v. United States*, 90 Fed.Cl. 447, 450 (2009). The plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Arakaki v. United States*, 62 Fed.Cl. 244, 247 (2004). A dismissal under RCFC 12(b)(1) "is warranted when, assuming the truth of all allegations, jurisdiction over the subject matter is lacking." *Arakaki*, 62 Fed.Cl. at 247 (2004) (internal quotations omitted). "When a party challenges the jurisdictional facts alleged in the complaint, the court may consider relevant evidence outside the pleadings to resolve the factual dispute." *Id.; see* 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.30[3] (3d ed. 2012) ("[U]nlike a Rule 12(b)(6) dismissal, the court need not confine its evaluation to the face of the pleadings...."). If the court determines that it does not have jurisdiction, it must dismiss the claim. RCFC 12(h)(3).

### III. Discussion

#### A. Section 1500 Does Not Bar the Court from Exercising Jurisdiction over Plaintiff's Schenectady, Meadowbrook and Henderson Property Claims

Defendant contends that 28 U.S.C. § 1500 bars the court from exercising jurisdiction

---

on which to base the award of a money judgment." (internal citations omitted)); *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 138 n. 1, 453 F.2d 1272, 1274 n. 1 (1972) ("Where the relief is monetary, we can call upon such equitable concepts as rescission and reformation to help us reach the right result. If procedural techniques which are the children of equity were forbidden to this court, we could not utilize such common and useful practices as intervention,

depositions and discovery ...." (internal citation omitted)).

9. Congress recently amended the Contract Disputes Act (CDA) and enacted it into positive law. *See* Act of Jan. 4, 2011, Pub.L. No. 111–350, 124 Stat. 3677 (the CDA amendment). The CDA amendment relocates the provisions of the CDA from 41 U.S.C. §§ 601–13 (2006) to 41 U.S.C. §§ 7101–09. *See id.* §§ 7101–09.

over plaintiff's Schenectady, Meadowbrook and Henderson Property Claims because plaintiff has an action pending in the District Court "for or in respect to" the same claims. *See* Def.'s Mot. 7–13. However, defendant's interpretation of a "pending" action for the purposes of section 1500 is not supported by the case law.

Defendant argues that "regardless of filing order, if a plaintiff files complaints based upon the same operative facts in both the Court of Federal Claims and another court, this [c]ourt is bound to dismiss the action pending before it." *Id.* at 10. Defendant references the order-of-filing rule established by *Tecon Eng'rs, Inc. v. United States (Tecon), see id.* at 8, in which the United States Court of Claims (Court of Claims) held that section 1500 bars this court from exercising jurisdiction over "any claim for or in respect to which plaintiff has pending, in any other court any suit against the United States, only when the suit shall have been commenced in the other court *before* the claim was filed in this court," 170 Ct.Cl. 389, 399, 343 F.2d 943, 949 (Ct.Cl.1965) (emphasis added); *see Tohono,* 131 S.Ct. at 1729 (stating that *Tecon* "held that [section] 1500 does not prohibit two identical suits from proceeding so long as the action in the [Court of Federal Claims] ... is filed first"). According to defendant, the Supreme Court "has recently expressed its disagreement with the order-of-filing exception established in *Tecon.*" Def.'s Mot. 8 (referencing *Tohono* ). As support for its position, defendant points to language in *Tohono* in which the Supreme Court refers to *Tecon* as " 'precedent that left [section 1500] without meaningful force.' " *Id.* at 9 (quoting *Tohono,* 131 S.Ct. at 1729).

■ The Supreme Court made clear, however, that the *Tecon* order-of-filing rule was not before it: "The *Tecon* holding is not presented in this case because the [Court of Federal Claims] action here was filed after the District Court suit." *Tohono,* 131 S.Ct. at 1729–30; *see also id.* at 1735 (Sotomayor, J., concurring) ("[T]he validity of the Court of Claims' holding in *Tecon* ... is not presented in this case. This Court has never considered that holding."). And, as this court stated in *Kaw Nation of Okla. v. Unit-*

*ed States (Kaw Nation),* 103 Fed.Cl. 613, 617 (2012), "the [Court of Federal Claims] is powerless to disregard binding ... precedent on the mere belief that a subsequent Supreme Court opinion casts doubt on a prior decision of the Court of Claims or [United States Court of Appeals for the] Federal Circuit." 103 Fed.Cl. at 618. Accordingly, the court agrees with other judges of this court and holds that *Tohono* does not disturb the order-of-filing rule set forth in *Tecon. See, e.g., Starr Int'l Co. v. United States (Starr Int'l),* 106 Fed.Cl. 50, 60 (2012) (rejecting the government's argument that the *Tecon* order-of-filing rule "is no longer controlling authority in light of dicta from *Tohono O'Odham* "); *Otoe–Missouria Tribe of Indians, Okla. v. United States,* 105 Fed.Cl. 136, 139 (2012) ("The Court rejects Defendant's argument once again ... and holds that *Tecon* is still good law and has not been overturned."); *Nez Perce Tribe v. United States,* 101 Fed.Cl. 139, 145 (2011) (finding that *Tohono* left "undisturbed" *Tecon's* order-of-filing rule); *Coeur d'Alene Tribe v. United States,* 102 Fed.Cl. 17, 25 (2011) (stating that *Tohono* "declined to either overrule or explicitly endorse *Tecon's* order-of-filing rule, and it did not indicate otherwise that *Tecon* is no longer good law"); *Yakama Nation Hous. Auth. v. United States,* 102 Fed.Cl. 478, 484 (2011) ("[T]he *Tohono O'Odham* Court neither considered nor overruled *Tecon* in its application of § 1500.").

■ Plaintiff filed his original Complaint with this court on February 8, 2012, *see* Compl. 1, and his pro se Complaint with the District Court on March 9, 2012, *see* Def.'s App. A12 (Pro Se Compl.). "Section 1500 deprives this Court of jurisdiction ... only where a plaintiff commences a suit in the other court before filing in this [c]ourt." *Starr Int'l,* 106 Fed.Cl. at 60 (citing *Tecon,* 170 Ct.Cl. at 399, 343 F.2d at 949); *see Low,* 90 Fed.Cl. at 451 ("[T]his Court is not divested of jurisdiction when a claim that was first filed here is subsequently brought in another court."). Plaintiff's pro se Complaint was therefore not "pending" within the meaning of section 1500 when plaintiff filed his original Complaint.

■ Despite defendant's argument to the contrary, *see* Def.'s Mot. 10–11, the court's jurisdiction is not affected by the fact that plaintiff amended his original Complaint on May 30, 2012—nearly three months after filing his pro se Complaint, *see* Am. Compl. 1. "The question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed...." *Lovela-dies Harbor, Inc. v. United States*, 27 F.3d 1545, 1548 (Fed.Cir.1994) (en banc); *see Keene Corp. v. United States (Keene)*, 508 U.S. 200, 207, 217 n. 12, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (endorsing the Court of Federal Claims' application of "the long-standing principle that the jurisdiction of the Court depends upon the state of things at the time of the action brought" (internal quotation marks omitted)); *accord Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1367 n. 3 (Fed.Cir.2010) (looking to the date of the original complaint, rather than the amended complaint, to determine whether the plaintiff lacked standing "because 'the jurisdiction of the Court depends on the state of things at the time of the action brought'" (quoting *Keene*, 508 U.S. at 207, 113 S.Ct. 2035)). Because plaintiff filed his action in the Court of Federal Claims approximately one month before he filed his pro se Complaint in the district court, section 1500 does not divest this court of jurisdiction over plaintiff's Schenectady, Meadowbrook and Henderson Property Claims.[10]

## B. The Court Does Not Have Jurisdiction to Award General Equitable Relief

The amended Complaint makes several requests for declaratory and injunctive relief. *See* Am. Compl. ¶¶ 23, 25, 27, C, F. In particular, the amended Complaint seeks the following declarations from the court: that HUD violated its regulations by terminating the HAP contract associated with the Schenectady Property and "that the termination was illegal and contrary to law and therefore a nullity,"[11] *id.* ¶ 23; that the HAP contracts associated with the Schenectady and Meadowbrook Properties are "valid and enforceable," *see id.* ¶ F; "that HUD has failed to comply with its own regulations regarding its decision that [p]laintiff lacked experience to manage the Flushing Property, and that the decision was illegal and contrary to law and therefore a nullity," *id.* ¶ 25; and that HUD violated the foreclosure sale use agreement associated with the Henderson Property, "and that the decision not to return the purchase price was illegal and contrary to law and therefore a nullity," *id.* ¶ 27; *see id.* ¶ 18. The amended Complaint also requests that the court "enjoin [d]efendant from demolishing the Henderson Property and using [p]laintiff's [line of credit] money for any purposes." *Id.* ¶ C.

The court is without jurisdiction to award the declaratory and injunctive relief requested in the amended Complaint. *See Marathon Oil Co.*, 17 Cl.Ct. at 119 ("[T]he [United States Claims Court] specifically does not have general power to enter declaratory or injunctive relief."); *Nat'l Air Traffic*, 160 F.3d at 716–17 (stating that "the Court of Federal Claims has never been granted general authority to issue declaratory judgments"); *Ford v. United States*, 101 Fed.Cl. 234, 236 (2011) ("This Court does not have jurisdiction over claims solely for injunctive relief ...."); *supra* Part II.A.3 (noting that the limited circumstances under which this court may grant equitable relief are not present here).

Although most of the requests for declarations in the amended Complaint fall under

10. Given the court's finding that plaintiff did not have "pending in any other court any suit or process against the United States" at the time plaintiff filed his original Complaint, *see* 28 U.S.C. § 1500 (2006), the court does not address whether the claims in plaintiff's original Complaint are "for or in respect to" the same claims as those in plaintiff's pro se Complaint, *see Otoe-Missouria Tribe of Indians, Okla. v. United States*, 105 Fed.Cl. 136, 138 (2012) (stating that "the Court must first determine whether Plaintiff's district court action was 'pending' as defined by § 1500 at the time Plaintiff filed its complaint with this Court," and that "[o]nly if the Court finds that the action was 'pending' does the Court move on to the second question, that is, whether [the] district court claim is 'for or in respect to' the claim filed in this Court").

11. The amended Complaint does not make a similar request with respect to the HAP contract associated with the Meadowbrook Property. *See* Am. Compl. *passim.*

the heading "Count II Declaratory Judgment," *see* Am. Compl. ¶¶ 23, 25, 27,[12] the court's inquiry "does not end with the words of the complaint, however instructive they may be, for we still must look to the nature of the action in determining the existence or not of jurisdiction," *James v. Caldera*, 159 F.3d 573, 579 (Fed.Cir.1998) (internal quotation marks omitted); *see Pines Residential Treatment Ctr., Inc. v. United States*, 444 F.3d 1379, 1380 (Fed.Cir.2006) ("Regardless of a party's characterization of its claim, we look to the true nature of the action in determining the existence or not of jurisdiction." (internal quotation marks omitted)). As discussed *supra* in Part II.A.3, "merely because the court must make a ruling of law ... in order to arrive at a money judgment does not render this court's decision a 'declaratory judgment'...." *Pauley*, 219 Ct.Cl. at 38, 591 F.2d at 1315; *see Hydrothermal*, 26 Cl.Ct. at 16 (stating that the court has the "authority to issue rulings of law declaring the rights of parties under a contract where such rulings are necessary to the resolution of a claim for money presently due and owing").

It appears that at least some of the requests in the amended Complaint for declarations may be interpreted as potential rulings of law "necessary to the resolution of a claim for money presently due and owing." *See Hydrothermal*, 26 Cl.Ct. at 16. For example, some of the requests for money judgment in the amended Complaint appear to stem from breach of contract claims associated with one or more of the four properties. *See* Am. Compl. ¶¶ B (requesting judgment "in the amount of $50,000, or the total amount of [p]laintiff's earnest money deposit on the Flushing Property, plus interest"), D (requesting judgment "in the amount of the full purchase price of the Henderson Property, plus interest and [the] release [of] the line of credit [funds]"), E (requesting judgment "for the full balance due and owing ... on the HAP contracts for [the] Meadowbrook and Schenectady [Properties]").

In order to conclude that plaintiff is entitled to a money judgment, the court will likely examine whether the HAP contracts associated with the Schenectady and Meadowbrook Properties are, in fact, "valid and enforceable," *cf. id.* ¶ F, and whether HUD did, in fact, violate the foreclosure sale use agreement associated with the Henderson Property, *cf. id.* ¶ 27. The court may also be required to examine whether HUD violated its regulations and whether its actions were "illegal and contrary to law and therefore a nullity" in order to conclude that defendant breached the contracts associated with the Schenectady and Flushing Properties from which a monetary judgment could flow. *See id.* ¶¶ 23, 25. Given that the parties are seeking to stay the case, *see infra* Part III.C (granting the parties' request to stay this case), the court declines further to address the characterization of plaintiff's requests for declarations at this juncture. The parties shall submit further briefing on this issue, on a schedule that will be determined by the court with the assistance of the parties, after the court lifts its stay of the case.

### C. The Parties' Request to Stay This Matter Is Granted

 Both parties "seek[ ] to have this matter stayed pending the outcome of the matter in [the] United States District Court." *See* Pl.'s Resp. ¶ 4; *accord* Def.'s Reply 2 ("For those claims over which we have not challenged the [c]ourt's jurisdiction, we agree with [plaintiff] that they be stayed pending resolution of [plaintiff's] district court proceeding."). The court therefore stays the proceedings.

### IV. Conclusion

For the foregoing reasons, defendant's Motion is DENIED except to the extent GRANTED-IN-PART in Part II.A.1. *See supra* Part II.A.1 (granting defendant's request to dismiss HUD and the Attorney General of the United States as named defendants in this case). The parties' request to stay is GRANTED. In order to determine the extent to which plaintiff's requests for declaratory relief may be interpreted as po-

---

**12.** The exception is the request that "this [c]ourt declare the HAP [contracts] valid and enforceable," which falls under a "WHEREFORE, Plaintiff respectfully requests" clause. Am. Compl. ¶ F.

tential rulings of law necessary to reach a money judgment, the court will schedule further briefing when it lifts its stay of the case.

IT IS SO ORDERED.